UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIRVONTRE INGRAM,<br>    Plaintiff,<br>    v.<br>CARLOS G. BOLANOS,<br>    Defendant. | Case No. 22-cv-02457-WHO (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 22 |

## INTRODUCTION

Plaintiff Sirvontre Ingram alleges in this 42 U.S.C. § 1983 action that his jailor, the San Mateo County Sheriff, instituted a policy that prevented him from receiving any mail, thereby violating his First Amendment rights. Defendant Sheriff Bolanos moves for summary judgment on grounds that Ingram did not exhaust his administrative remedies and that there was no such policy. The motion is unopposed; Ingram filed no response to defendant's motion.

I will grant summary judgment: Ingram did not exhaust his administrative remedies regarding his claim that in April 2021 defendant instituted a policy preventing inmates from receiving any mail. And even if Ingram had exhausted his administrative remedies, he has not presented evidence that any such policy existed. Accordingly, defendant's motion for summary judgment is GRANTED.

## BACKGROUND

Ingram alleges that in April 2021 his jailors at the San Mateo County Sheriff's Office instituted a policy that stopped all incoming mail for prisoners. (First Am. Compl., Dkt. No. 13 at 2-3.) Defendant contends that Ingram has not exhausted his administrative remedies and that there was no such policy. (Def.'s Mot. for Summ. J. (MSJ), Dkt. No. 22 at 3.)

### i. Defendant's Summary of Mail Policies

Defendant avers that "[a]t no point during the time that Plaintiff was in the Sheriff's Office custody did the Sheriff's Office prohibit Plaintiff [from] receiving any mail." (MSJ, Gilletti Decl., Dkt. No. 22-1 ¶ 9.) In April 2021, all mail sent to inmates (other than legal mail) was "searched in accordance with the Sheriff's Office's Corrections Division's Policy and Procedures Manual" for contraband before being delivered to inmates. (MSJ, Dkt. No. 22 at 4.) Any mail containing contraband (such as money orders, drugs, or pornography) was withheld from inmates and returned to the sender with a notice. (*Id.*) A copy of the returned mail notice was given to the inmate to whom the mail was addressed. (*Id.*) "At some point in 2021, the Sherriff's Office started scanning the Regular Mail and delivering most personal mail via an electronic tablets [*sic*] to better prevent contraband from entering its facilities." (*Id.*) "Even with this change, inmates still received their Regular Mail that complied with Sheriff's Office's policies." (*Id.*)

### ii. Ingram's Grievances

Ingram was in the custody of the San Mateo County Sheriff's Office from about March 2021 to November 2022. (*Id.* at 3.) While there Ingram filed eight grievances, four of which raise claims regarding mail access. (*Id.* at 4.)

- On June 3, 2021, he filed a grievance complaining about a lack of "equal access" to the "visiting kiosks" or "messaging via the tablets." (*Id.*, Gilletti Decl., Dkt. No. 22-1 at 14);
- On June 5, 2021, he filed a grievance in which he accused prison officials of tampering with his mail and limiting the amount of mail he was allowed to receive. (*Id.* at 16);
- On July 23, 2021, he alleged in a grievance that he had not received packets of photographs that had been sent to the facility. (*Id.* at 20);
- On October 30, 2021, he filed a grievance alleging that he sent mail containing personal pictures but when the enveloped was delivered to the recipient, it was empty. (*Id.* at 22).

2

1   The only grievance that might be relevant for purposes of exhaustion is the one
2   dated June 5, 2021.  In that one, Ingram complains about "mail tampering" and that his
3   jailors are violating "Title 15 1063" which states that there is "no limitation on the volume
4   of mail that an inmate may send or receive." (*Id.* at 16.)  He states that he was "forced to
5   agree with the new mail system that this County has unlawfully put into place," and he
6   asks that "his mail rights . . . be restarted to their proper legal compasity [*sic*]." (*Id.*)

### STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with

3

1  reasonable particularity, the evidence that precludes summary judgment. *Id.* If the
2  nonmoving party fails to make this showing, "the moving party is entitled to a judgment as
3  a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

**DISCUSSION**

**I.   EXHAUSTION**

Defendant contends in his motion for summary judgment that Ingram did not exhaust his claim that defendant instituted a policy that prevented him from receiving any mail. Ingram has not filed any response to the motion, which is therefore unopposed.

Prisoners must exhaust their administrative remedies properly before filing suit in federal court, as mandated by the Prison Litigation Reform Act. *Ross v. Blake*, 578 U.S. 632, 638-641 (2016); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner is required to exhaust the grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Blake*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2006)). Unless the administrative process is not available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust —irrespective of any 'special circumstances.'" *Id.* at 639. "[T]hat mandatory language means a court may not excuse a failure to exhaust." *Id.*

The prison's requirements define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90. The exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The defendant bears the burden of proving that an administrative remedy was available to the prisoner and that he failed to exhaust such remedy. *Albino v. Baca*, 747

F.3d 1162, 1172 (9th Cir. 2014). "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

The defendant's motion for summary judgment is unopposed. A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact). The court may, however, grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact. *See United States v. Real Property at Incline Village*, 47 F.3d 1511, 1520 (9th Cir. 1995) (local rule cannot mandate automatic entry of judgment for moving party without consideration of whether motion and supporting papers satisfy Fed. R. Civ. P. 56), rev'd on other grounds sub nom. *Degen v. United States*, 517 U.S. 820 (1996); *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 950 (9th Cir. 1993) (same).

Defendant has presented evidence that an administrative remedy was available to Ingram — he filed eight grievances during his custody — and that he did not exhaust his mail claims. The only grievance that might be relevant for purposes of exhaustion is the one dated June 5, 2021. In that one, Ingram complains about "mail tampering" and that his jailors are violating "Title 15 1063" which states that there is "no limitation on the volume of mail that an inmate may send or receive." (MSJ, Gilletti Decl., Dkt. No. 22-1 at 16.) He states that he was "forced to agree with the new mail system that this County has unlawfully put into place" and he asks that "his mail rights . . . be restarted to their proper legal compasity [*sic*]." (*Id.*) This grievance does not allege that there was a new policy that stopped <u>all</u> mail. Rather, it states that Ingram's jailors are violating existing mail policy by limiting the volume of mail and that he had to agree to the new mail system, presumably the system of electronic tablets and kiosks. Also, the operative complaint

5

1  states that the new full-stoppage policy was instituted in April.  (First Am. Compl., Dkt.
2  No. 13 at 2.)  The grievance was not filed until June.  Ingram has not shown a genuine
3  dispute of material fact, and the papers in support of the motion for summary judgment are
4  evidence that Ingram did not exhaust his claims.  Defendant's papers are sufficient to
5  support the motion and do not on their face reveal a genuine issue of material fact.
6  Accordingly, defendant's motion for summary judgment is GRANTED.

## II.  MERITS

Even if Ingram had exhausted his administrative remedies, Ingram has not shown that the full-stoppage policy was ever created, let alone implemented.  Defendant has presented evidence that there was no such policy in the Policy and Procedures Manual at the time of the alleged stoppage, nor was one ever created or implemented.  (MSJ, Gilletti Decl., Dkt. No. 22-1 ¶¶ 6-9.)  Ingram has not filed any opposition to the motion and therefore has not created a genuine dispute of material fact that there was such a policy.  His supposition that there was such a policy is not evidence.  That there were delays in accessing mail on the new system of electronic tablets — as he mentioned in his June 3 grievance — does not constitute a full-stoppage of mail.  Accordingly, defendant's motion for summary judgment is GRANTED.

## CONCLUSION

Defendant Bolanos's motion for summary judgment is GRANTED.  (Dkt. No. 22.)  The Clerk shall terminate all pending motions, enter judgment in favor of defendant, and close the file.

**IT IS SO ORDERED.**

**Dated:**  May 3, 2024



WILLIAM H. ORRICK
United States District Judge